IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

SHARON F. SLOUGH,                                              Case No. 03-10520-8-JRL
        Debtor.
_____

BRENDA WATTS,
        Plaintiff,

v.

SHARON SLOUGH and                                              Adversary Proceeding
STEPHEN H. SLOUGH,                                             No. L-04-00015-8-AP
        Defendants.

BRENDA WATTS,
        Plaintiff,

v.

SHARON SLOUGH, STEPHEN H.                                      Adversary Proceeding
SLOUGH, individually and as                                    No. L-04-00158-8-JRL
Trustee, BRIAN K. SHEETS, and
JEFFREY L. SHEETS,
        Defendants.

BRENDA WATTS,
        Plaintiff,

v.

SHARON SLOUGH and STEPHEN                                      Adversary Proceeding
H. SLOUGH,                                                     No. L-04-00142-8-JRL
        Defendants.
_____

**<u>ORDER</u>**

      This matter is before the court on the "Motion for Reconsideration" filed by Brenda Watts and the

"Trustee's Response to Motion to Reconsider and, in the Alternative, Motion to Reconsider Order" filed

1

by James B. Angell, Chapter 7 trustee.

Watts moves the court to alter or amend its judgment entered March 24, 2005, pursuant to Bankruptcy Rule 9023. Because Watts filed her motion within ten days of entry of the judgment, the court will consider her motion under Rule 9023. Bankruptcy Rule 9023 adopts Federal Rule 59, and Federal Rule 59(e) allows the court to correct errors by amending an earlier judgment. In the Fourth Circuit, three limited grounds for amending an earlier judgment are recognized: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, 525 U.S. 1104, 119 S.Ct. 869 (1999). Watts asserts that the court erred by allowing the trustee's motion to intervene, by substituting the trustee as a party-plaintiff in the fraudulent transfer claims in the three adversary proceedings under §544(b), and by dismissing Watts as party-plaintiff in the fraudulent transfer claims.

Watts cites §544.03 of the Revised 15th Edition of *Collier on Bankruptcy* to support that the trustee is precluded from using his avoidance powers when "there are matters of record giving constructive notice of a competing interest," such as "lis pendens." 5 COLLIER ON BANKRUPTCY §544.03 (15th Ed. Rev. 2005). That section of the treatise addresses §544(a), giving the trustee power to avoid transfers and obligations of the debtor to the same extent as a hypothetical judicial lien creditor, a creditor holding an execution returned unsatisfied, or a bona fide purchaser of real property. 11 U.S.C. §544(a). In the cases at bar, the trustee seeks to avoid the transfers of property pursuant to §544(b), which gives the trustee the power to avoid "any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . ." 11 U.S.C. §544(b). Section 544(b) "chains the trustee

to the rights a creditor would have to void fraudulent transfers under applicable local law, absent bankruptcy." Campbell v. Deans (In re: J.R. Deans Co., Inc.), 249 B.R. 121, 129 (Bankr. D.S.C. 2000). Based upon North Carolina and South Carolina law, the court concluded that Watts is an unsecured creditor, and that the trustee had succeeded to the unsecured creditor's interests regarding the fraudulent transfer claims. Because §544(b) is the subject of the court's analysis, the section of *Collier* cited by Watts is not compelling.

The court stands by its holding that Watts' filing of lawsuits and notices of lis pendens did not create security interests in the underlying properties. The notices of lis pendens served as constructive notice of pending litigation, but they did not create liens on the properties at issue. *See* N.C. Gen. Stat. §1-118; Hill v. Pinelawn Memorial Park, Inc., 304 N.C. 159, 164, 282 S.E.2d 779, 782-783 (N.C. 1981); S.C. Code Ann. §15-11-20; Pond Place Partners, Inc. v. Poole, 351 S.C. 1, 16-17, 567 S.E.2d 881, 889 (S.C. Ct. App. 2002).

Watts never pursued pre-judgment attachment. N.C. Gen. Stat. §1-440.33 (a lien of attachment is created when the certificate of levy is docketed and indexed). It is that lien through attachment that "relates back to the time of the filing of the notice of lis pendens if the plaintiff has prior to the levy caused notice of the issuance of the order of attachment to be properly entered on the lis pendens docket of the county in which the land lies . . ." N.C. Gen. Stat. §1-440.33; *see also* S.C. Code Ann. §15-19-240 (attachment lien binds real estate attached from the date of lodgment of the warrant of attachment). Notably, in the cases that Watts cites in support of her position, the creditors had secured orders of attachment before receiving final judgments. Medlin v. Hartford Fire Ins. Co., 229 B.R. 353 (Bankr. E.D.N.C. 1998)(orders of attachment issued, property levied upon, and notices of lis pendens filed before

3

final judgment obtained); Edwards v. Brown's Cabinets, 63 N.C. App. 524, 305 S.E.2d 765 (N.C. Ct. App. 1983)(order of attachment issued, notice of lis pendens filed, and property levied upon prior to entry of principal judgment). In fact the very definition of lis pendens set forth in both Medlin and Edwards assumes that a creditor has obtained an order of attachment. Medlin, 229 B.R. at 358; Edwards, 63 N.C.App. at 528 (lis pendens "is a statutory device by which the world is put on notice that an order of attachment has been issued with respect to certain real property owned by a party against whom a monetary judgment is sought").

Here, no pre-judgment attachment was sought or obtained.

In its order of March 24, 2005, the court adopted the rationale set forth in In the Matter of Leonard, 125 F.3d 543 (7th Cir. 1997) regarding the application of §544(b). Watts argues that this case is distinguishable from Leonard because this court lifted the automatic stay. However, lifting the automatic stay and allowing the creditor to continue the actions against the debtor did not preclude the trustee from seeking to intervene as the real party in interest, pursuant to §544(b). *See* Carlton v. Baww, Inc., 751 F.2d 781, 784-785 (5th Cir. 1985). The court finds Leonard to be on point, as it held that the trustee properly succeeded to the interests of an unsecured creditor in a fraudulent conveyance action under §544(b). Leonard, 125 F.3d at 545-546.

Watts requests the court to address §546(b)(1), which provides: "[t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that— (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." The court refers to the case of In re Rodemeyer, 99 B.R. 938 (Bankr. N.D. Iowa 1989), whereby a creditor obtained a lis pendens indexing of his state court fraudulent

4

conveyance action prior to the debtor's filing bankruptcy. The creditor did not obtain pre-judgment attachment of the property. Under Iowa law, the court concluded that the bank's notice of lis pendens did not create a lien upon the property at issue; moreover, it did not alter the rights and powers of the trustee as contemplated by §546(b)(1). Id. at 942. The court stated: "It is true that parties acquiring interest in the property after the lis pendens indexing would be bound by the outcome of the litigation. However, any lien obtained by the judgment creditor would still be created as of the date of the judgment." Id.

Likewise, this court concludes that, under both North Carolina and South Carolina law, obtaining a final judgment in an action where a lis pendens notice was filed but no pre-judgment attachment was obtained is not an act of perfection which relates back to the date of filing the lis pendens. The filing of the lis pendens did not give Watts an "interest in property" to be perfected. While a lis pendens provides constructive notice of litigation and binds a party acquiring interest in the property to the outcome of the litigation, N.C. Gen. Stat. §1-118, S.C. Code Ann. §15-11-20, an actual judgment lien is not created until the judgment is docketed. *See* N.C. Gen. Stat. §1-234 (judgment lien effective for 10 years from the date the judgment is docketed); Moore v. Jones, 226 N.C. 149, 152 (N.C. 1946)(a docketed judgment fixes lien); S.C. Code Ann. §15-39-30; Charleston Heights Co. v. City Council of Charleston, 138 S.C. 187, 136 S.E. 393 (S.C. 1926)(lien upon real estate is created by the judgment); Commercial Credit Loans, Inc. v. Riddle, 334 S.C. 176, 512 S.E.2d 123 (S.C. App. 1999)("A South Carolina judgment entered upon the book of abstracts and duly indexed constitutes a lien upon the real estate of the judgment debtor located in the county where the judgment is indexed for a period of ten years"). The "relation back" language under N.C. Gen. Stat. § 1-440.33 referred to in the cases of Medlin and Edwards was not triggered here, as Watts never pursued the remedy of attachment. Watts' filing of notices of lis pendens in the state actions

does not impact the trustee's avoidance power under §544(b).

Lastly, the court will consider the trustee's motion under Bankruptcy Rule 9023, as he timely filed it within the prescribed 10-day frame. The trustee moves the court to reconsider that portion of the order holding that the court lifted the automatic stay in these cases when it entered a scheduling order. The trustee asserts that the July 20, 2004 status conference was not sufficient to put parties on notice that the automatic stay might be lifted. The court stands by its holding that it implicitly lifted the automatic stay in these cases when it entered a scheduling order on July 27, 2004 that moved these cases forward. The court gave Watts' attorney and the trustee a sufficient opportunity to discuss the progression of these cases at the status conference on July 20, 2004. While §362(d) states that a stay can be lifted "after notice and a hearing," it means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. §102(1)(A); Powers v. American Honda Finance Corp., 216 B.R. 95, 97 (N.D.N.Y. 1997)(no separate evidentiary hearing required before court lifted stay). At the time, the trustee did not object to Watts' continued prosecution of these cases; therefore, the court entered a scheduling order that moved these cases forward. The trustee points out that the original case from Cabarrus County was not pending in this court at the time of the status conference. That case was removed to the U.S. Bankruptcy Court for the Middle District of North Carolina and thereafter transferred to this court on July 29, 2004 (Case No. 04-00158-8-JRL). However, Watts' attorney and the trustee discussed the status of the Cabarrus County case at the conference. Moreover, the July 27, 2004 order provided a schedule that consolidated all of the cases for pretrial proceedings, including the Cabarrus County case.

6

For the foregoing reasons, the court denies the motions to reconsider filed by Watts and the trustee.

**So Ordered.**

**Dated: May 2, 2005**

        **s/ J. Rich Leonard**
        **J. Rich Leonard**
        **United States Bankruptcy Judge**